**CHASE v. BUSINESS MEN'S ASSUR. CO. OF AMERICA.**

No. 375.

Circuit Court of Appeals, Tenth Circuit.

June 18, 1931.

Joseph E. Evans, of Ogden, Utah, for appellant.

Solon T. Gilmore, of Kansas City, Mo. (John Gilmore, of Kansas City, Mo., and Thatcher & Young, of Ogden, Utah, on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an action on a policy of health and accident insurance. The amended complaint in part alleged:

"That between June 21, 1929, and July 19, 1929, at Ogden, Utah, said A. Harris Chase was totally and continuously disabled from performing any and every kind of duty pertaining to his occupation, and that on said July 19, 1929, he died, and that said disability and death were caused by typhoid fever which was occasioned by and resulted from bodily injuries effected solely through accidental means, to-wit, by his drinking polluted and contaminated water, to-wit, water containing typhoid bacilli, at Ogden, Utah, on or about June 13, 1929, believing such water to be pure and fit for drinking purposes,

being uninformed of the polluted condition of such water and being ignorant of the fact that it contained typhoid bacilli."

The trial court sustained a demurrer to the amended complaint on the ground that it did not state facts sufficient to constitute a cause of action. Plaintiff declined to plead further and the court entered a judgment of dismissal.

The insuring clause of the policy in part provided:

"Business Men's Assurance Company of America hereby insures A. Harris Chase, whose occupation is Manager, against loss resulting from bodily injuries effected solely through accidental means, and against loss resulting from sickness contracted after fifteen days from the date hereof, subject to the provisions and limitations hereinafter contained."

Art. I of the policy provided for temporary or permanent loss of time from sickness.

Art. II provided for temporary or permanent loss of time from bodily injuries.

Art. III in part provided:

"If such injuries shall totally and continuously disable the insured from date of accident from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous total disability, but within five years from date of accident, shall result, independently of all other causes, in any one of the losses enumerated below, or within ninety days from the date of the accident, irrespective of total disability, result in like manner in any one of such losses, the Company will pay the sum set opposite such loss, which sum shall include any claim for disability.

"Indemnity for Loss of Life shall be Payable to Doris M. Chase (wife), Beneficiary.

"Principal sum $5,000.00

"For Loss of — Life    The Principal Sum."

Art. VII provided:

"Blood poisoning or septicemia resulting from bodily injuries shall be deemed to be included in said term, bodily injuries."

Art. XII in part provided:

"The accident insurance under this policy does not cover any injury, fatal or otherwise * * * caused directly or indirectly * * * by any disease or medical or surgical treatment therefor. * * * The health insurance under this policy does not cover * * * disability for any period for which the insured has either made claim or may be-

come entitled to indemnity from this or any other company, on account of injuries by accidental means. * * * The term, bodily injuries, wherever used in this policy, shall be understood to be the bodily injuries effected as described in the insuring clause."

It is clear, from the foregoing provisions, that it was intended the policy should insure against disability caused by sickness and by bodily injuries, and for death resulting from "bodily injuries effected solely through accidental means"; and that it should not insure against death resulting from disease.

The rule is well settled in the national courts that contracts of insurance, like other contracts, should be construed according to the sense and meaning of the terms which the parties have used, and that those terms ought to be taken, understood and given effect in their plain, ordinary and popular sense, and that it is only where, because of ambiguity in the language employed, the contract is fairly susceptible of two interpretations—one favorable to the insured and the other favorable to the insurer—that the rule of liberal construction in favor of the insured may be applied. Liverpool & London & Globe Ins. Co. v. Kearney, 180 U. S. 132, 135, 136, 21 S. Ct. 326, 45 L. Ed. 460; Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 462, 463, 14 S. Ct. 379, 38 L. Ed. 231; New Amsterdam Casualty Co. v. Central National Fire Ins. Co. (C. C. A. 8) 4 F.(2d) 203, 207-209; Hawkeye Commercial Men's Ass'n v. Christy (C. C. A. 8) 294 F. 208, 211, 40 A. L. R. 46; United States F. & G. Co. v. Centropolis Bank of Kansas City, Missouri (C. C. A.) 17 F.(2d) 913, 53 A. L. R. 295; Firemen's Ins. Co. v. Lasker (C. C. A. 8) 18 F.(2d) 375, 379; United States F. & G. Co. v. McCarthy (C. C. A. 8) 33 F.(2d) 7, 10, 70 A. L. R. 1447; East & West Ins. Co. v. Fidel (C. C. A. 10) 49 F.(2d) 35; United States F. & G. Co. v. Guenther, 281 U. S. 34, 50 S. Ct. 165, 74 L. Ed. 683.

The policy expressly provided that the insurance against loss of life should cover only when death resulted "from bodily injuries effected solely through accidental means" and that the "accident insurance * * * does not cover any injury, fatal or otherwise, * * * caused directly or indirectly * * * by any disease."

Therefore, the question is whether the death of the insured, caused by typhoid fever contracted by drinking water contaminated with typhoid bacilli without his knowledge of such contamination, resulted "from bodily

injuries effected solely through accidental means," rather than from disease.

It is difficult, if not impossible, to draw an exact line of demarcation between bodily injuries and bodily disease. The two concepts are not always exclusive of each other; they often overlap. Pathogenic bacteria or disease germs may be taken into the system through the nose, the mouth or other normal channels of entry. Usually the absorption into the system is incidental to a normal bodily process. In such cases where disease follows, common understanding looks upon, and common speech describes the introduction of such germs into the system as the contracting of a disease rather than the suffering of an accidental injury. On the other hand, where the channel of infection is abnormal in that it results from trauma,—a bruise, a cut, a wound—the layman views, and in his everyday speech describes the event as an accident. Connelly v. Furniture Co., 240 N. Y. 83, 147 N. E. 366, 39 A. L. R. 867.

■ It is true that where an accidental injury to the body brings about or causes a disease, which in turn causes death, the cases generally hold the accidental means is the cause of such death. Western Commercial T. Ass'n v. Smith (C. C. A. 8) 85 F. 401, 404, 40 L. R. A. 653; New Amsterdam C. Co. v. Shields (C. C. A. 6) 155 F. 54; 1 C. J. p. 430. In such a case, the disease is an effect of the accident, the incidental means produced and used by the original cause, the accident, to bring about its fatal effect, a mere link in the chain of causation between the accident and the death; and the death is attributable to the accident. Western Commercial T. Assn. v. Smith, supra. But there is a clear distinction under this policy between bodily injuries accidentally incurred resulting in disease which causes death, and disease accidentally contracted resulting in bodily impairment which causes death. In the instant case, there were no accidental means effecting a bodily injury which brought about or caused the disease from which death resulted. Rather, there was an unintentional introduction of typhoid bacilli into the body, which set up the disease of typhoid fever, and which itself caused physical impairment resulting in death. There was no bodily injury caused by accidental means. On the contrary, there were bodily injuries caused by disease which were excluded from the coverage of the policy.

■ Counsel for plaintiff contends that the introduction of typhoid bacilli by insured in-to his system was accidental in the sense that it was unintentional and that an infectious disease, such as typhiod fever, injures the body, and that, therefore, as the effect of such accident, insured suffered bodily injuries resulting in his death. In the ordinary sense of the words, we do not regard the contracting of an infectious disease, through the normal consumption of food, air or water infected with the bacilli which causes such disease, as the suffering of bodily injuries from accidental means. We regard it, rather, as the contracting of a disease. In their ordinary and popular sense, the phrase "bodily injuries" conveys the idea of a cut, a bruise or a wound rather than a physical impairment caused by disease.

But, even if we assume that typhoid fever or a typhoid infection is a bodily injury, the policy by its express terms provides that the accident insurance shall not cover any injury caused directly or indirectly by any disease. See Lincoln Nat. Life I. Co. v. Erickson (C. C. A. 8) 42 F.(2d) 997; Bacon v. U. S. Mut. Accident Ass'n, 123 N. Y. 304, 25 N. E. 399, 9 L. R. A. 617, 20 Am. St. Rep. 748. It may be that there is no scientific basis for drawing a distinction between a bruised finger as a bodily injury and typhoid fever as a disease, but the policy provision, last referred to, draws a clear distinction between bodily injury and disease. Likewise, the ordinary man makes a distinction between them in his common speech. And, in construing this insurance contract, we are concerned not with scientific definitions but with the ordinary meaning of common words. The policy, therefore, does not cover death resulting from typhoid fever not caused or brought about by accidental bodily injuries, unless it was intended that the word "disease" should not include infectious and contagious diseases. The language of the policy discloses no intent to so limit the meaning of the word "disease." On the contrary, the provisions of Art. VII, which expressly provided that "blood poisoning or septicemia resulting from bodily injuries shall be deemed to be included in said term 'bodily injuries.'" clearly indicates, under familiar rules of construction, the intent to exclude from the coverage "bodily injuries" caused by any other infectious disease. Moreover, the fact that the parties wrote in such express provision with reference to septicemia indicates that they were of the opinion the general language in other provisions of the policy excluded from the coverage injuries caused by infectious diseases.

· To hold otherwise, we must construe the policy, which provided that it does not insure against bodily injuries caused directly or indirectly by disease, as insuring against death resulting from all infectious and contagious diseases, because a normal person will not intentionally expose himself to the bacteria which cause such diseases, and the contracting thereof will always be accidental.

We have carefully considered the cases relied upon by counsel for plaintiff. In some of such cases, the insured suffered bodily injuries as the result of accident which in turn caused a disease from which he died. In others, there were no contractual provisions similar to those in the instant case, limiting the coverage. Others were cases of ordinary poisoning, not usually regarded as a disease. We think they are distinguishable from the instant case.

It is our conclusion that death resulting from typhoid fever is not within the coverage of this policy. The judgment is therefore affirmed.