## DAY v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.
### No. 1340.

Circuit Court of Appeals, Tenth Circuit.
April 7, 1936.

BRATTON, Circuit Judge, dissenting.

John T. Adams, Philip Hornbein, and Theodore Epstein, all of Denver, Colo., for appellant.

Percy A. Robinson and Carl C. Hearnsberger, both of Denver, Colo., for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

This action at law on the double indemnity clause of a life insurance policy was brought in the state court; after proper removal, a bill of particulars was filed stating in detail the circumstances of the accident. Defendant thereupon demurred to the complaint so supplemented; the trial court sustained the demurrer and, plaintiff declining to plead further, judgment was entered for the defendant. This appeal is from that judgment.

By the clause in question, for a separate premium, defendant agreed to pay an additional $5,000 if death resulted solely from bodily injuries caused directly by accidental means, "and shall not be the result of or be caused directly or indirectly * * * by engaging as a passenger or otherwise in submarine or aeronautic expeditions."

If insured's death was caused by his engaging in an aeronautic expedition, there is no liability; if not, there is. The facts alleged are:

"The insured was a passenger in an aeroplane in the City and County of Denver, State of Colorado, and that during said flight said aeroplane accidentally crashed to earth and as a result of which the said insured met his instantaneous death."

The bill of particulars discloses that one Reed, a friend of Day's, brought a privately owned plane to Denver some ten days before the accident; neither the plane nor Reed was licensed to carry passengers for hire; plaintiff does not know whether Reed was licensed to carry any passengers, but alleges that he had had fifty hours of flying experience. The plane was airworthy. Reed took Day up for a pleasure

flight over the airport and the outskirts of Denver when there were no ·unfavorable weather conditions. Day was a guest only and had no part in handling the plane. Reed did a simple loop and the ship had straightened out when it went into the fatal spin.

As words are ordinarily used, can it fairly be said that a pleasure trip over an airport on a pleasant day is an "expedition"? The majority of the court believe not. It is difficult for us to believe that the ordinary man, in speaking of such a flight, would say that he had gone on an "expedition." None of us has ever heard any one use that expression when speaking of an ordinary trip in a plane. It must be borne in mind that the language of a policy is read when the policy is bought as well as when there is a loss. The mythical average man when offered this policy would not, as we see · it, think that an ordinary airplane trip was excluded by the formidable words "submarine or aeronautic expeditions." On the contrary, the words carry an implication of a military exploit or of an exploration into remote regions or over new routes. If it were intended, when the policy was drafted and offered for sale, to exclude from coverage every loss resulting from an airplane trip or flight, it is believed that counsel drafting the clause could have found language less apt to mislead the buying public than such a redoubtable phrase as this. Judge Gardner's language in Gregory v. Mutual Life Ins. Co. of New York (C.C.A.8) 78 F.(2d) 522, 524, is apposite:

"Nearly a million passengers were carried by airplane last year. Insurance companies know that the public to which they are selling insurance is to a greater or less extent so traveling. These companies either intend to insure against accident resulting from the use of the airplane as a means of transportation, or they do not, and it is only fair that if they do not intend to include such hazards that it should be made so clear that a person of ordinary intelligence on reading the contract offered will readily understand that such hazard is not covered. The expression, being doubtful and ambiguous, must be construed most strongly against the insurance company."

If, when this policy was purchased, Mr. Day had looked at the dictionaries to ascertain whether an ordinary ride in an airplane was excluded from his coverage by the menacing expression "submarine or aeronautic expeditions," he would readily have concluded that a short or casual pleasure trip was not excluded. Webster's International defines expedition as "An important journey or excursion for a specific purpose." Funk & Wagnall's "A journey, march, or voyage, generally of several or many persons, for a definite purpose." The Oxford English Dictionary as "A journey, voyage, or excursion made for some definite purpose." The Century as "An excursion, journey, or voyage made by a company or body of persons for a specific purpose." Webster's example is "as, a military or exploring expedition"; the Century as "Wilke's exploring expedition; a trading expedition to the African Coast." In no dictionary have we found a definition which fairly embraces the fatal trip taken here.

The rising tide of airplane travel and the efforts of life and accident companies to avoid too great a hazard without curtailing too seriously their underwriting have brought the general question before the courts many times. Our own court, in Head v. New York Life Ins. Co., 43 F.(2d) 517, 520, said: ."The word 'engage' connotes more than a single act or a single transaction; it involves some continuity of action." No such continuity is here alleged. In Gits v. New York Life Ins. Co. (C.C.A.7) 32 F.(2d) 7, it was held that the clause "engaging in submarine or aeronautic operations" did not embrace a passenger on a pleasure flight. In Pittman v. Lamar Life Ins. Co. (C.C.A.5) 17 F.(2d) 370, the insured was walking slowly around a plane in which he owned a half interest and which was out of repair so the motor could not be cut off when he landed; · it was held that he was killed as a result of "participation in * * * aeronautic activity." In First Nat. Bank of Chattanooga v. Phœnix Mut. Life Ins. Co. (C.C.A.6) 62 F.(2d) 681, the insured was the president, active manager, and principal stockholder of an airplane company. The insured frequently used planes in his business and had had some instruction as an aviator. Over the objection of the pilot to going up under existing weather conditions, a trip was started which ended fatally. It was held that insured was "participating in aeronautic operations" since he, as president and manager of the company, interposed and enforced his judg-

ment on the pilot in the vital matter of suitable flying weather. In Mayer v. New York Life Ins. Co. (C.C.A.6) 74 F.(2d) 118, 119, 99 A.L.R. 155, a passenger was held to be one who was "engaging as a passenger or otherwise in * * * aeronautic operations." In Goldsmith v. New York Life Ins. Co. (C.C.A.8) 69 F.(2d) 273, 275, certiorari denied 292 U.S. 650, 54 S.Ct. 860, 78 L.Ed. 1500, it was held, Judge Stone dissenting, that a passenger in a plane was not covered by a policy excepting those "engaging, as a passenger or otherwise, in submarine or aeronautic operations." In the later case of Gregory v. Mutual Life Ins. Co. of New York (C.C.A.8) 78 F.(2d) 522, 524, certiorari denied 56 S.Ct. 157, 80 L.Ed. ——, the same court held without dissent that a father who had bought a plane for his son and who had been up a few times before, and who was killed while riding with his son as a guest, was not "participating in aeronautics." There are a number of state cases on the general subject [1] which we do not take time to analyze. Two cases from state courts of the highest standing involve this particular clause and arrive at diametrically opposed conclusions. They are Gibbs v. Equitable Life Assurance Soc., 256 N.Y. 208, 176 N.E. 144, 145, holding the company not liable to a passenger; and Provident Trust Co. v. Equitable Life Assurance Soc. (1934) 316 Pa. 121, 172 A. 701, holding the company is liable to a passenger. The New York court said:

"For all that, a voyage either under the sea or in the air was not customary for the average individual. It was an extraordinary event and was thought to be and was accompanied by unusual hazards. A very small proportion of all people now living have ever been subjected to either experience."

Even if an ordinary airplane trip is an event fraught with hazard, it does not seem to follow that it is necessarily an expedition. All expeditions may be hazardous events, but all hazardous events are not expeditions. If a novitiate boarded an unbroken mustang, it would doubtless prove to be a hazardous event, but would not be accurately spoken of as an expedition. The New York court assumed that passengers never went on expeditions; that in order to reconcile the use by the insurance company of "passenger" and "expedition" in the same clause, some meaning should be given to "expedition" which will reconcile it with the word "passenger." We doubt the assumption of fact. Wiley Post's lamented exploratory trip to the remote regions of the north was an expedition in its accepted sense, and Will Rogers was, as we understand, a passenger. Expeditions are sometimes accompanied by those who have no part in planning or executing the exploration, but who go as passengers or guests simply for the adventure. But even if there be a conflict in the ordinary meaning of these two words selected by the insurance company in writing its policy, the rule in this jurisdiction is to resolve the ambiguity against the party selecting the words. Graham v. Business Men's Assur. Co. of America (C.C.A.10) 43 F.(2d) 673; East & West Ins. Co. v. Fidel (C.C.A.10) 49 F.(2d) 35; Chase v. Business Men's Assur. Co. of America (C.C.A.10) 51 F.(2d) 34; Aschenbrenner v. U. S. F. & G. Co., 292 U.S. 80, 54 S.Ct. 590, 593, 78 L.Ed. 1137. Although entertaining the highest respect for the Court of Appeals of New York, we do not agree that there is a necessary ambiguity or conflict in a clause embracing passengers on expeditions; but if there were, the rule in this jurisdiction would be to resolve that conflict against the insurer rather than to extend the meaning of "expedition" to reconcile it with the word "passenger."

In the Aschenbrenner Case, supra, the Supreme Court again adhered to the established and wholesome rule that in con-

[1] Benefit Ass'n v. Hayden, 175 Ark. 565, 299 S.W. 995, 57 A.L.R. 622; Missouri State Life Ins. Co. v. Martin, 188 Ark. 907, 69 S.W.(2d) 1081; Tierney v. Occidental Life Ins. Co., 89 Cal.App. 779, 265 P. 400; Price v. Prudential Ins. Co., 98 Fla. 1044, 124 So. 817; Masonic Acc. Ins. Co. v. Jackson, 200 Ind. 472, 164 N.E. 628, 61 A.L.R. 840; Flanders v. Benefit Ass'n, 226 Mo.App. 143, 42 S.W.(2d) 973; Bew v. Travelers' Ins. Co., 95 N.J.Law, 533, 112 A. 859, 14 A.

L.R. 983; Peters v. Prudential Ins. Co., 133 Misc. 780, 233 N.Y.S. 500; Charette v. Prudential Ins. Co., 202 Wis. 470, 232 N.W. 848; Blonski v. Bankers' Life Co., 209 Wis. 5, 243 N.W. 410.

The only Colorado case bearing even remotely on the subject is Pacific Mut. Life Ins. Co. v. Van Fleet, 47 Colo. 401, 107 P. 1087, where it was held that one who for amusement occasionally took a flight in a balloon did not thereby change his occupation to an "aeronaut."

struing contracts words "will be given the meaning that common speech imports." We do not believe any one, in common speech, would ever refer to an ordinary short trip in a plane as an "expedition." In any event, reasonable men might differ on the point; and if so, then the ambiguous phrase should be resolved in favor of the customer who purchased the policy and not in favor of the company which drafted it.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.

BRATTON, Circuit Judge (dissenting).

The identical double indemnity provision contained in this policy was considered in Gibbs v. Equitable Life Assurance Soc., 256 N.Y. 208, 176 N.E. 144, and it was held that recovery could not be had under it for the death of a passenger on a regular transport plane. Believing that the doctrine enunciated in that case has application and is controlling here, I am constrained to dissent.