**MASSACHUSETTS PROTECTIVE ASS'N, Inc., v. BAYERSDORFER.**

No. 7881.

Circuit Court of Appeals, Sixth Circuit.

June 28, 1939.

Bailey Aldrich, of Boston, Mass. (Garfield, Cross, Daoust, Baldwin & Vrooman, A. D. Baldwin, and Leslie R. Ulrich, all

of Cleveland, Ohio, and F. H. Nash, of Boston, Mass., on the brief), for appellant.

John E. Irvine, of Steubenville, Ohio (Smith, Francis & Irvine, Carl H. Smith, all of Steubenville, Ohio, on the brief), for appellee.

Before HICKS, HAMILTON, and ARANT, Circuit Judges.

HICKS, Circuit Judge.

Appellee, a resident of Steubenville, Ohio, sued appellant upon a policy of accident insurance issued by it upon the life of her husband, Stanley W. Bayersdorfer. Clause G provided in part, "This policy does not cover death * * * sustained as the result of participation in aviation, aeronautics or subaquatics. * * *"

The facts were either stipulated or unchallenged. Bayersdorfer was a merchant at Steubenville. On April 7, 1936, he embarked at Camden, N. J., as a fare-paying passenger, on an airliner operated by Transcontinental and Western Air Lines, Inc. Its destination was Pittsburgh. Flying through a dense fog, the plane crashed and Bayersdorfer was killed. The policy was issued August 15, 1933.

The court heard the case without a jury and, rejecting appellant's defense that the deceased's death resulted from "participation in aviation" or "aeronautics," entered a judgment in favor of appellee.

The appeal presents the question: Whether the quoted portion of Clause G absolved appellant from liability. There are no Ohio decisions interpreting a like clause. This court has twice had before it appeals involving insurance company liability for death resulting from aeroplane accident. In First Natl. Bank of Chattanooga v. Phoenix Mut. Life Ins. Co., 6 Cir., 62 F.2d 681, 682, it held that one who owned a plane, employed a pilot to operate it, and determined whether weather conditions warranted flight and the time for flight, was "participating in aeronautic operations," even though he did not actually pilot the plane. In Mayer v. New York Life Ins. Co., 6 Cir., 74 F.2d 118, 99 A.L.R. 155, it decided that the beneficiaries of the insurance of a fare-paying passenger, killed in an aeroplane accident, could not recover double indemnity under a policy providing that the double indemnity provisions did not apply to deaths resulting from engagement "as a passenger or otherwise, in * * * aeronautic operations." Neither decision is controlling here. Bay-

ersdorfer had no voice in the operation of the plane as in the first case; and there was no clause in the instant policy, denying recovery to passengers, as in the Mayer case.

Deceased was a merchant. No contention is made that he had any voice in the operation of the plane. He simply bought passage on a commercial transport plane, operated by a company in the business of air transportation. Did he under these circumstances participate in aviation or aeronautics?

The meaning of the word "participation" has not varied appreciably in thirty years. In the Oxford Dictionary, Edition of 1909, it is defined as "1. The action or fact of partaking, having or forming part of. * * * 2. The fact or condition of sharing in common (with others; or with each other) * * * (b) A taking part, association or sharing (with others) in some action or matter." In the Funk & Wagnalls New Standard Dictionary, 1938 Edition, it is defined as "1. The act or state of sharing in common with others; a receiving or having part of something; a partaking. * * *" In Webster's New International Dictionary, 1932 Edition, it is defined as "1. Act or state of participating or sharing in common with others; * * * act or state of partaking or forming a part of." The New Century Dictionary, 1927 Edition, has it "* * * a taking part, as in some action or attempt."

The phrasing of the definitions differs slightly, but so far as we can judge, the concept is the same in all four dictionaries.

What acts, action, activity or attempt is it that insured must not take part in, share in common, or participate in, with others? What is the "aviation" and "aeronautics" he is forbidden to participate in?

In 1909, the word "aviation" did not appear in the Oxford Dictionary. It defined "aeronautics" as "The science, art or practice of sailing in the air; aerial navigation." The 1938 Funk & Wagnalls Dictionary defined aviation as "The art of flying; especially the management of aeroplanes." Aeronautics was "The branch of aerostatics which treats of floating in or navigating the air as in an airship or aeroplane. 2. The art or practice of sailing or floating in the air, * * *." The New Century Dictionary, 1927, defined aviation as "The act, art or science

595

of flying by mechanical means, esp. with machines heavier than air; navigation of the air with flying machines or aeroplanes"; and aeronautics as "The science or art of aerial navigation." Webster, 1932, defined the terms as follows: Aviation, "The art or science of locomotion by means of aeroplanes"; and aeronautics, "The science and art of self sustained flight in air, as by means of a balloon; aerial navigation; ballooning."[1]

These definitions disclose that both "aviation" and "aeronautics" are highly technical subjects in the realm of art and science, and were so when the policy was written. The 1927 Funk & Wagnalls Dictionary defined both subjects in the same terms, used in the 1938 edition. There is hardly any basis for ambiguity. Bayersdorfer was a merchant,—a passenger. As such he placed himself in the hands of those who were versed and practiced in the science and art of aviation and aeronautics. He did not share in common with them in the management or navigation of the plane. He incurred, perforce, the incidental hazards, but the policy was to protect him against hazards and if this particular one was intended to be excepted, more explicit language could have been used.

■ Even if the language be considered ambiguous, we should arrive at the same conclusion, on the principle of construction, that it should be interpreted most favorably to the insured. Mutual Ins. Co. v. Hurni Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102.

Clause G has been considered by other courts. In Sneddon v. Mass. Protec. Ass'n, Inc., 39 N.Mex. 74, 39 P.2d 1023, the insured was killed while riding as an invited passenger in a privately owned plane. The court held that he was participating in aviation or aeronautics within the exception but the circumstances were such that the case bears little analogy to Bayersdorfer's situation.

In Bew v. Travelers' Ins. Co., 95 N.J.L. 533, 112 A. 859, 14 A.L.R. 983, the policy excluded death resulting from "participating in * * * aeronautics." The court held that a passenger was thus participating in aeronautics, reasoning that one who was not steering a toboggan but riding thereon was nevertheless participating in the sport; and that one riding in the back seat of a car was participating in automo-

biling. See also Travelers' Ins. Co. v. Peake, 82 Fla. 128, 89 So. 418; Meredith v. Business Men's Acc. Ass'n, 213 Mo.App. 688, 252 S.W. 976; and Head v. N. Y. Life Ins. Co., 10 Cir., 43 F.2d 517.

But in Gregory v. Mutual Life Ins. Co. of New York, 8 Cir., 78 F.2d 522, 524, the court held that " 'participation in aeronautics' * * * do not * * * include a passenger on a transport airplane." To the same effect is Mutual Ben. Health & Acc. Ass'n v. Moyer, 9 Cir., 94 F.2d 906; Marks v. Mut. Life Ins. Co. of New York, 9 Cir., 96 F.2d 267; and Mutual Ben. Health & Acc. Ass'n v. Bowman, 8 Cir., 99 F.2d 856. The Bew and Peake cases were decided in 1921, the Meredith case in 1923, and the Head case in 1930. But the cases upholding appellee's contention have all been decided since 1935.

■ We think that the later cases reflect a changing attitude toward aviation, due no doubt to the marvelous progress made in the art of flying. In the early days each flight was a venture. The pilot and passenger, if he had one, flew tandem, or side by side, in an open cockpit over unknown terrain, to make-shift landing fields. Today transport flying is a business. The air lines have modern landing fields and passenger stations, and their established scheduled routes are protected by radio beams, beacons, weather reports, etc. They compete with each other for patronage and people in increasing numbers are using their services as a matter of course. Their passengers no more participate in the operation of their planes than do passengers upon a railroad train participate in operating the train or those upon an ocean liner participate in navigating the ship. They pay their fares and passively accept the services and accommodations offered. The pilot is employed because of his skill and efficiency. The passenger is not permitted to direct or control him as to how, where or when he shall fly. Any sensible passenger would not presume to do so. If it was ever true, it cannot now be said that a fare-paying passenger on a commercial air liner "participates in aviation or aeronautics." Words, after all, are but labels whose content and meaning continually shifting with the times. Towne v. Eisner, 245 U.S. 418, 425, 38 S.Ct. 158, 62 L.Ed. 372, L.R.A.1918D, 254.

The judgment is affirmed.

[1] Webster, 1936, defined aviation as "The art or practice of operating heavier-than-air aircraft."