18927

Betty WASHINGTON, Respondent, v. NATIONAL SERVICE FIRE INSURANCE COMPANY, Appellant.

(168 S. E. (2d) 90)

*Messrs. J. Spratt White* and *Donald V. Richardson* of *Whaley, McCutchen, Blanton & Richardson,* of Columbia, *for Appellant,*

*Hemphill P. Pride, II, Esq.,* of *Jenkins, Perry & Pride,* of Columbia, *for Respondent,*

June 3, 1969.

BRAILSFORD, Justice.

On December 24, 1965, Betty Washington, while riding as a passenger in a 1957 Ford driven by Edna Mae Brown, was injured in a collision. She recovered a default judgment against Brown, and then brought this action against National Service Fire Insurance Company as Brown's liability insurance carrier by virtue of a policy issued by National on August 30, 1965, in which Brown and Marion Boyles were the named insureds and the 1957 Ford was listed as the owned automobile. The two insureds were occupants of the same household and shared the use of the vehicle which belonged to them jointly.

By consent, the action was tried by reference, and this appeal by National is from a judgment in favor of plaintiff for $10,000.00, the limit of the insurance coverage.

It is conceded that the policy was of force on the collision date. The principal question on this appeal is whether an endorsement, applied for by Marion Boyles on December 20, 1965, but not issued until December 27, 1965, which purported to substitute a 1961 Chevrolet for the 1957 Ford as the owned automobile, relieved National of liability with respect to the collision of December 24.

The 1961 Chevrolet was purchased by Marion Boyles and Edna Mae Brown on December 20, 1965, but not as a replacement of the 1957 Ford. On the same day Boyles went to Donald L. Bowen, an insurance agent through whom the National policy had been obtained, for the purpose of securing insurance on the Chevrolet. The existing policy, which had been certified to the South Carolina Highway Department as to Boyles, under the provisions of the

Financial Responsibility Act, contained the following provision:

*Newly Acquired Automobiles.*

"An automobile, ownership of which is acquired by the named insured or his spouse, if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured or such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required if the newly acquired automobile replaces an owned automobile covered by the policy. The insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured or such spouse has other valid and collectible insurance. The named insured shall pay any additional premiums required because of the application of the insurance to such newly acquired automobile."

Shortly after the issuance of this policy, National, apparently by direction of the South Carolina Insurance Commission, ceased to write new business in this State. Its only general agent was withdrawn, and all local agents were notified that no additional vehicles would be covered. Mr. Bowen advised Boyles that the newly acquired automobile could not be added to the existing policy, but that he would request a policy endorsement substituting the 1961 Chevrolet for the 1957 Ford. At the same time, he would apply through the assigned risk plan for an additional policy covering the Ford, with Edna Mae Brown as the named insured. Boyles assented to these proposals and paid a premium for which he was given a receipt.

Mr. Bowen did nothing about the matter until December 23 when he forwarded to National's general agent in Atlanta, Georgia, a request for a policy endorsement, effective December 20, 1965, eliminating the Ford from the policy and adding the Chevrolet. Christmas

intervening, this request was not received by the Atlanta agent until December 27. When the endorsement was issued on the date, the collision had already occurred. Neither Boyles' assent to Bowen's proposals on December 20, nor Bowen's request for an endorsement, which was mailed on December 23, effected an amendment of the policy. So far as the record discloses, that could be accomplished only by the general agent. Therefore, the 1957 Ford was the owned automobile listed in the policy on December 24 and as such was a covered vehicle. The 1961 Chevrolet was also a covered vehicle (not because of a substitution of vehicles) per force the automatic insurance provision of the policy which we have quoted above.

The form of endorsement requested and issued was appropriate to a replacement situation in which the new automobile is automatically substituted for the one replaced when the exchange is effected. In such cases, the ensuing endorsement merely evidences a substitution which has already been accomplished. No prejudice can result from designating the date of the exchange as the effective date of the ensuing endorsement. On the other hand, the acquisition of an additional automobile by an insured does not result in substitution. Instead, where as here the policy so provides, the new automobile is automatically covered without impairment of the insurance on the vehicle listed in the policy.

We perceive of no reason in logic or law why the policy endorsement which was issued on December 27, 1965, should be given retroactive effect to December 20, 1965, thereby relieving National of the liability fastened on it by the terms of the policy upon the happening of the collision on December 24, 1965.

Notice of the accident in question was promptly given to the insurance company, which promptly denied coverage upon the ground that the substitution of automobiles was effective as of December 20, 1965. However, National asserts as a defense that it was not given notice of the Washington claim, nor were the suit papers

forwarded to it as required by the policy. It is well settled that an insurer which has denied coverage on some other basis is precluded from defending against an action on a liability policy on the ground that the insured failed to comply with its requirements as to notice and forwarding of suit papers. 7 Am. Jur. (2d), Automobile Insurance, Sec. 188; Annotation, 18 A. L. R. (2d) 491, Sec. 31. The purpose of these policy requirements is to "enable the insurer to inform itself promptly concerning the accident, to investigate the circumstances, and prepare a timely defense, if necessary on behalf of the insured. Compliance with such a provision is unnecessary and serves no good purpose where the insurer has disclaimed liability under the policy." *Andrews v. Cahoon,* 196 Va. 790, 86 S. E. (2d) 173, 180.

Having waived notice of claim and forwarding of suit papers, National is precluded from relying upon any omissions in these respects either as a policy defense or as an escape from the conclusive effect of the default judgment against its insured.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.